884 P.2d 252

**Diane BRYAN, formerly known as Diane Coupaud, a married woman dealing with her sole and separate property, Plaintiff–Appellant,**

v.

**Andrew Jack NELSON, Jr. and Shirley Nelson, husband and wife, Defendants–Appellees.**

No. 1 CA–CV 92–0172.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 13, 1994.

Reconsideration Denied Nov. 2, 1994.

Law Offices of Wm. Lee Eaton by William Lee Eaton, Prescott, for appellant.

Head & McCoy by Dale A. Head and Gregory A. Larson, Phoenix, for appellees.

**OPINION**

VOSS, Judge.

Appellant Diane Bryan asks us to reverse the summary judgment entered against her by the trial court on a declaratory judgment action in which she sought to establish a lien against the property of Appellees Andrew and Shirley Nelson. Because the decree of dissolution in Appellant's divorce did not create a lien on the property acquired by Appellees, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Appellant's divorce was finalized by decree of dissolution on July 14, 1980. In that decree, the trial court awarded the marital home to Appellant's ex-husband and further ordered that Appellant "be guaranteed the sum of [$20,000] from the proceeds of the sale [of the home] within six (6) months after the sale of the home or at the time that the last of the children living in the home attain[s] the age of eighteen...."

A certified copy of the decree of dissolution was recorded in the office of the Yavapai County Recorder on August 5, 1980. On December 24, 1980, Appellant's ex-husband obtained a $25,000 line of credit from Great Western Bank and Trust secured by a note and deed of trust on the former marital home. The ex-husband eventually defaulted on this note and Citibank, the successor in interest to Great Western Bank and Trust, foreclosed on the property, paid off the first deed of trust, and on September 22, 1987, purchased the property at a trustee's sale. Citibank subsequently sold the property to Appellees.

On October 29, 1990, appellant filed a complaint in Yavapai County Superior Court seeking a declaration that her recorded decree of dissolution made her the holder of a first lien against the real property of Appellees. Appellees filed an answer denying the allegations of the complaint and thereafter filed a motion for summary judgment, contending that the recorded decree did not create an enforceable lien. Appellant filed a response and a cross-motion for summary judgment. After hearing argument on the respective motions, the trial court granted summary judgment in favor of Appellees. Appellant posted a cost bond and timely appealed.

**ISSUES**

This case presents two issues:

A. Did Appellant create an enforceable lien against the property acquired by Appellees by recording the decree of dissolution; and

B. If so, did the lien expire because of Appellant's failure to renew it pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–1551?

**DISCUSSION**

A. *Existence of a Lien*

■ In Arizona, a decree of dissolution can create a lien against real property in one

of two ways: (1) The trial court can create a lien under A.R.S. section 25–318 (the divorce lien statute) to enforce the provisions of the decree; or (2) if the recorded decree qualifies as a final judgment and has been recorded in compliance with sections 33–961 to –964 (the general lien statutes), it will give rise to a lien against all of the judgment debtor's property. *See McClanahan v. Hawkins,* 90 Ariz. 139, 367 P.2d 196 (1961). Unfortunately for Appellant, her decree of dissolution does not qualify under either possibility.

### 1. Creation of a Lien Under A.R.S. Section 25–318

■ Under section 25–318, the trial court has the power to:

impress a lien upon the separate property of either party or the marital property awarded to either party in order to secure the payment of any interest or equity the other party has in or to such property.... The decree or judgment shall specifically describe by legal description· any real property affected....

A.R.S. § 25–318(C) (1991). In our view, to create a lien under this statute, the trial court must satisfy two requirements in the language of its decree. First, it must "impress a lien" by expressly indicating that a lien is being created. *Id.* Second, it must "specifically describe *by legal description* any real property affected" by the lien. *Id.* (emphasis added). Neither requirement was met.

■ Here, the trial court simply ordered that Appellant "be guaranteed the sum of [$20,000] from the proceeds of the sale of said real property." "[S]aid real property" was described previously in the decree as "the real property ... located at 3059 Yazi Circle, Prescott, Arizona...." Nothing in this language indicates a clear intent to impress a lien on the real property in question.

Similarly, the necessary legal description is lacking. By statute, a legal description describes real estate either:

(a) By reference to a lot, block, tract or parcel as set forth within a recorded subdivision plat,

(b) By the use of a metes and bounds or course and distance survey,

(c) By any use of the governmental survey system, with specific identification of the location within any section or sections of a township and range, or

(d) By reference to the book and page of a properly recorded instrument describing real estate in the manner set forth in subdivision (a), (b) or (c).

A.R.S. § 47–9105 (Supp.1993). Also, A.R.S. section 11–482 which governs county recorders, defines a sufficient description of real estate as one which is based on a "reference by record location" to a recorded instrument containing "a legal description sufficient to determine the physical location of [the] real property." A.R.S. § 11–482 (1990).

We find no authority for the proposition that reference by street address alone is sufficient to constitute a "legal description" for purposes of A.R.S. section 25–318. Thus, Appellant's decree of dissolution did not create a lien under section 25–318.

### 2. Creation of a Lien Under A.R.S. Sections 33–961 to –964

■ Judgment liens do not exist at common law, they exist only by statute, *Tway v. Payne,* 55 Ariz. 343, 101 P.2d 455 (1940), and A.R.S. sections 33–961 to –964 control their creation in Arizona. Under section 33–964, a judgment becomes a lien "upon all real property of the judgment debtor" after it has been recorded "as provided in section 33–961...." A.R.S. § 33–964(A) (Supp.1993).[1] Here, there is no evidence or argument that

---

**1.** Section 33–961 requires that a copy of the judgment of the court "be filed and recorded in the office of the county recorder in each county where the judgment creditor desires the judgment to become a lien upon the property of the judgment debtor" and requires that the certified copy of the judgment set forth the:

1. Title of the court and the action and number of the action.

2. Date of entry of the judgment and the docket record thereof.

3. Names of the judgment debtor and judgment creditor.

4. Amount of the judgment.

5. Attorney of record for the judgment creditor.

A.R.S. § 33–961(A) (Supp.1993).

Appellant failed to properly record her divorce decree, but recordation is not the only requirement. As our supreme court has noted: "Not every judgment directing the payment of money can become a lien prior to the levy of an execution." *McClanahan*, 90 Ariz. at 141, 367 P.2d at 197. To create a lien under the general judgment lien statute, a judgment "must be final and conclusive, and the amount due must be definite and certain." *Id.* at 141–42, 367 P.2d at 197 (citing 30A Am.Jur. *Judgments* § 483 (1958) and 49 C.J.S. *Judgments* § 458 (1947)).

■■■■■ Appellant contends that the $20,000 mentioned in her divorce decree qualifies as a certain, final sum that created a lien when the decree was recorded. Appellant, however, fails to interpret the *McClanahan* standard, requiring "final and conclusive" judgments, in the context of the generally accepted rule that a judgment creates a lien when it is final, valid, definite, *and* collectible by execution against the debtor's property. 49 C.J.S. *Judgments* § 458 (1947); 46 Am. Jur.2d *Judgments* § 242 (1969).[2] Thus, in our opinion, absent specific language creating an equitable lien, a divorce decree that orders the payment of money at some future time is not conclusive enough to support a general lien under A.R.S. section 33–964.

This holding is a natural extension of the prior cases in Arizona that have addressed this topic. In the first of these, *McClanahan*, the supreme court indicated that items such as spousal maintenance and child support payments are not final and do not come within the scope of the general judgment lien statute. *McClanahan*, 90 Ariz. at 141–44, 367 P.2d at 197–99. Rather, the court held that "[t]he single determined amount *due* under the provisions of the divorce decree" supported the creation of a judgment lien. *Id.* at 144, 367 P.2d at 199 (emphasis added) (granting a judgment lien for $150 in attor-

neys' fees awarded in the decree but denying any lien for yet-to-be-paid support payments). *McClanahan* clearly holds that if the trial judge does not apply the divorce lien statute at the time of the divorce, a lien for support and other payments does not arise automatically as the payments accrue. Rather, it arises "only when the court has formally determined the total amount due and has reduced the delinquent payments to judgment." *Id.* at 144, 367 P.2d at 199.

Similarly, in *Willoughby v. King*, 21 Ariz. App. 589, 593, 522 P.2d 54, 58 (1974), we held that delinquent support payments do not become a lien upon the separate property of the obligor until a determinative judgment has been entered and recorded in accordance with the general judgment lien statute. And in *Luna v. Luna*, 125 Ariz. 120, 126, 608 P.2d 57, 63 (App.1979), we held that an order for payment of monthly installments from one party in a divorce to the other as part of the property settlement "can only be enforced by ... bringing a deficiency action and obtaining a judgment upon which [one] can execute."

Read together, these cases clearly indicate that without specific lien-creating language in the order, divorce decrees ordering future payments (whether for support, alimony, or property settlement) do not qualify as final, conclusive judgments for purposes of creating a judgment lien.

Here, as discussed above, Appellant's decree of dissolution neither specifically created a lien for the $20,000 under the divorce lien statute, nor gave her an immediately executable judgment for that amount because the $20,000 was not "due" until the conditions of the decree were met.[3] Under such circumstances, we cannot view Appellant's recorded divorce decree as conclusive enough to create a judgment lien.[4]

---

**2.** 46 Am.Jur.2d *Judgments* § 242 corresponds to 30A Am.Jur. *Judgments* § 483 cited in *McClanahan.*

**3.** Whether the $20,000 has already accrued under the decree is immaterial to our disposition of this case. Assuming the $20,000 is due, Appellant still needs to obtain and record a deficiency judgment before a general lien will arise against her ex-husband's property. Because Appellant

has not obtained any such judgment, she has no lien against any of her ex-husband's current property, and certainly not against the property he previously owned that now belongs to Appellees.

**4.** While we recognize that this holding has the potential of creating hardships for parties like Appellant who are owed installment payments, *see Uhrich v. Uhrich*, 173 Ind.App. 133, 362

### B. *Renewal of the Lien*

The second issue in this case is based on Appellant's contention that the five-year renewal requirement for judgment liens under A.R.S. section 12–1551 does not apply to her situation. *See Groves v. Sorce,* 161 Ariz. 619, 780 P.2d 452 (App.1989). Because we have determined that no lien was ever created, we need not address this issue.

### CONCLUSION

For the foregoing reasons, we hold that, even viewing the facts in a light most favorable to Appellant, no enforceable lien against her ex-husband's property was created by virtue of her recording the decree of dissolution. The trial court, therefore, acted properly in granting summary judgment to Appellees. The judgment of the trial court is affirmed.

GRANT, P.J., and TOCI, J., concur.

N.E.2d 1163, 1165 (1977) (Staton, P.J., dissenting), we believe any such difficulties can be avoided easily through the proper drafting of judgments, orders, or decrees.