IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

CECELIA M. LEWIS AND RANDALL LEWIS, A MARRIED COUPLE
*Plaintiffs/Appellants*

*v.*

RAY C. DEBORD AND ANNE NELSON-DEBORD, HUSBAND AND WIFE,
*Defendants/Appellees*

No. CV-14-0293-PR
Filed August 25, 2015

Appeal from the Superior Court in Pima County
The Honorable Gus Aragón, Judge
No. C20125400
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division Two
236 Ariz. 57, 335 P.3d 1136 (App. 2014)
**VACATED**

COUNSEL:

James M. Sakrison (argued), Diana L. Kanon, Slutes, Sakrison & Rogers, P.C., Tucson, Attorneys for Cecelia M. Lewis and Randall Lewis

Charles W. Wirken, Scott A. Malm (argued), Gust Rosenfeld P.L.C., Phoenix, Attorneys for Ray C. Debord and Anne Nelson-Debord

JUSTICE BRUTINEL authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES BERCH and TIMMER joined.

JUSTICE BRUTINEL, opinion of the Court:

¶1        Arizona's judgment lien statutes, A.R.S. §§ 33-961 through 33-

968, require the filing of an information statement, but do not specify the consequences of failing to do so. We conclude that failing to attach an information statement to a certified copy of the judgment does not invalidate an otherwise valid lien; rather the judgment lien simply lacks priority against competing creditors who record liens against the property before the information statement is filed.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶2        The underlying facts are not in dispute. In 2003, the Lewises obtained a default money judgment against Karen MacKean and Fred Foust (the "MacKeans"), a married couple. In 2006, the Lewises recorded their judgment in Pima County attempting to create a lien on the MacKeans' real property. They filed a renewal affidavit in 2008. Neither the initial recording nor the renewal was accompanied by a separate information statement as required by A.R.S. §§ 33-961(C) and 33-967(A).[1]

¶3        In March 2008, Karen MacKean purchased the property and almost immediately transferred it to Sonomex, LLC. Foust was Sonomex's statutory agent. In July 2012, the Debords, the defendants/appellees in this case, bought the property from Sonomex. A month later, the Lewises sought to foreclose their lien against the property and named the Debords, Sonomex, and MacKean as defendants. The Debords moved for summary judgment, arguing that the Lewises could not execute against the property because their failure to file an information statement rendered their judgment lien invalid. The trial court agreed and entered summary judgment in favor of the Debords.

¶4        The court of appeals affirmed, but on different grounds. *Lewis v. Debord*, 236 Ariz. 57, 335 P.3d 1136 (App. 2014). The court of appeals reasoned that recording a judgment without an information statement does not affect the resulting lien's validity, but the absence of an information statement affects the lien's priority among competing creditors and fee title holders like the Debords. *Id.* at 61 ¶ 13, 62 ¶¶ 15–16, 335 P.3d at 1140–41.

---

[1]        The Lewises did eventually file a renewal affidavit with an attached information statement in August 2013, well after the Debords purchased the property and recorded their fee interest.

The court concluded that the legislature intended, through the information statement requirement, to "carve[] out a narrow exception to the general principle that a subsequent purchaser who has notice of a judgment lien takes the property subject to it." *Id.* at 63 ¶ 18, 335 P.3d at 1142. The court thus held that the Lewises' lien lacked priority against the Debords' subsequent fee interest and the Lewises could not execute against the property. *Id.* at 63 ¶¶ 17–19, 335 P.3d at 1142.

¶5        We granted review of the Lewises' petition and the Debords' cross-petition because they present recurring legal issues of statewide importance regarding the judgment lien statutes. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.   ANALYSIS

¶6        Judgment liens are purely statutory remedies that give judgment creditors the right to force the sale of property to satisfy money judgments. *Sysco Ariz., Inc. v. Hoskins*, 235 Ariz. 164, 165 ¶ 6, 330 P.3d 354, 355 (App. 2014). Once attached, a judgment lien remains in place until it expires, is removed, or the judgment is satisfied. *Freeman v. Wintroath Pumps*, 13 Ariz. App. 182, 184, 475 P.2d 274, 276 (1970). The owner remains in full control of the property until the lienholder executes on the property, and any subsequent purchaser with constructive or actual notice of the lien takes the property subject to it. *Sysco Ariz.*, 235 Ariz. at 165 ¶ 6, 330 P.3d at 355.

### A. Failure to file an information statement does not invalidate a recorded lien, but does affect priority.

¶7        To create a judgment lien, a judgment creditor must comply with A.R.S. § 33-961, which provides:

> A. A copy of the judgment of a court, certified by the clerk, shall be filed and recorded in the office of the county recorder in each county where the judgment creditor desires the judgment to become a lien upon the real property of the judgment debtor *before the judgment shall become a lien upon or*

*in any manner affect or encumber the real property of the judgment debtor*, or any part of the real property of the judgment debtor. The certified copy of the judgment shall set forth the:

1. Title of the court and the action and number of the action.
2. Date of entry of the judgment and the docket record thereof.
3. Names of the judgment debtor and judgment creditor.
4. Amount of the judgment.
5. Attorney of record for the judgment creditor.

. . . .

C. A judgment or decree or any renewal that requires payment of money *shall also be accompanied by an information statement as prescribed by § 33-967.*[2]

(Emphasis added.) The cross-reference in subsection (C) indicates that compliance with § 33-967 is mandatory for all judgment liens recorded after January 1, 1997. Section 33-967 requires a judgment creditor to attach to the recorded judgment "a separate information statement," which must contain the name and address of the judgment debtor and creditor; the amount of the judgment; the judgment debtor's social security number, date of birth, and driver license number; and whether a stay of enforcement has issued. A.R.S. § 33-967(A)(1)–(5). A judgment lien or renewal recorded after January 1, 1997, has priority as of the date the judgment creditor filed the information statement. *Id.* § 33-967(D). Here we determine the effect of recording a judgment lien that complies with § 33-961(A), but does not include the information statement required by §§ 33-961(C) and 33-967.

---

[2] We note that the legislature has recently amended § 33-961. 2015 Sess. Laws, ch. 110, § 1 (1st Reg. Sess.). This amendment provides that "[o]n recording the judgment becomes a lien." *Id.* But this amendment is only applicable to judgments filed after December 31, 2015. *Id.* at § 3. Thus, it does not guide our analysis. *See BMO Harris*, 236 Ariz. at 365 ¶ 10 n.1, 340 P.3d at 1083 n.1 (noting that an amendment to the deed of trust statutes that had only prospective effect would not guide the analysis of previous statute).

¶8        We review the interpretation of statutes de novo. *BMO Harris Bank, N.A. v. Wildwood Creek Ranch, LLC*, 236 Ariz. 363, 365 ¶ 7, 340 P.3d 1071, 1073 (2015).  In construing a statute, our primary purpose is to give effect to the legislature's intent in enacting it. *J.D. v. Hegyi*, 236 Ariz. 39, 40 ¶ 6, 335 P.3d 1118, 1119 (2014).  Although we first examine a statute's language in attempting to discern legislative intent, when the language is susceptible to differing reasonable interpretations we interpret the statute "as a whole, and consider 'the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose.'" *State ex rel. Montgomery v. Harris*, 237 Ariz. 98, 101 ¶ 13, 346 P.3d 984, 987 (2014) (quoting *Calik v. Kongable*, 195 Ariz. 496, 500 ¶ 16, 990 P.2d 1055, 1059 (1999)).

¶9        The applicable statutes' text does not clearly specify the consequence of failing to file an information statement.  On the one hand, § 33-961(A) appears to prescribe what is necessary and sufficient "for the judgment to become a lien"; that is, the filing of a certified judgment that contains the required information set forth in that subsection. *See* A.R.S. § 33-961(A).  On the other hand, § 33-961(C) provides that a judgment or renewal "shall also" be accompanied by an information statement as prescribed by § 33-967.  The requirements of § 33-967 are "in addition to the requirements prescribed by § 33-961." A.R.S. § 33-967(A).  These provisions, added in 1996, could reasonably be read as making compliance with § 33-967 an additional prerequisite before a judgment "shall become a lien." *See* A.R.S. §§ 33-961(A), (C); 33-967; *see also T3 Properties, LLC v. Persimmon Invs., Inc.*, 299 P.3d 613, 617 ¶ 18 (Utah Ct. App. 2013) (holding that judgment lien statutes that essentially mirror Arizona's require that a recorded judgment "must be accompanied by an information statement in order to create a judgment lien on real property of the judgment debtor").  Despite this ambiguity, we conclude that compliance with § 33-961(A) alone suffices to create a valid lien on a judgment debtor's property.

¶10       Section 33-961(A) describes what is necessary to create a judgment lien and specifically requires compliance, "before the judgment shall become a lien." A.R.S. § 33-961(A); *Sysco Ariz.*, 235 Ariz. at 166 ¶ 10, 330 P.3d at 356 (holding no judgment lien created by judgment creditor filing an unsigned minute entry that did not comply with § 33-961(A)).  When the legislature added the information statement requirement in 1996,

it did not alter § 33-961(A) or provide any analogous language in the newly created §§ 33-961(C) or 33-967. *See* 1996 Ariz. Sess. Laws, ch. 289, §§ 5, 7. Neither of the latter statutes conditions the creation of a valid judgment lien on compliance with the information-statement requirement. Rather, the only express consequence for failing to file the information statement is contained in § 33-967(D), referring to priority. *See* A.R.S. § 33-967(D) ("A judgment . . . has as its priority the date of compliance with subsection (A) of this section."). This supports the conclusion that the legislature intended that omitting the mandatory information statement would only modify a lien's position and not its validity.

¶11        We hesitate to condition a lien's existence on compliance with § 33-967 when the legislature did not include language requiring such a result, particularly because it has used such language elsewhere. *See, e.g.*, *Estate of McGill ex rel. McGill v. Albrecht*, 203 Ariz. 525, 530–31 ¶ 20, 57 P.3d 384, 389–90 (2002) (declining to read a gross-negligence standard of care into a statute where legislature created that standard in other statutes but did not in the statute at issue). Section 33-963 provides that an abstract of judgment from a federal district court within this state "shall be recorded in the manner provided in § 33-961 *and in compliance with § 33-967, if applicable, before the judgment becomes a lien upon, or in any manner affects or encumbers, the real property of the judgment debtor*, or any part thereof."[3] (Emphasis added.) Because the legislature did not include similar language in reference to judgment liens based on Arizona state court judgments, we assume that this omission was purposeful. *See* A.R.S. §§ 33-961(C), 33-967(A); *cf.* A.R.S. § 33-962(B) (requiring judgments of justice or municipal courts to "be recorded in the manner provided in § 33-961 before it becomes a lien," without expressly conditioning the lien's creation on compliance with § 33-967). "It is not the function of the courts to rewrite statutes," *Orca Commc'ns Unlimited, LLC v. Noder*, 236 Ariz. 180, 182 ¶ 11, 337 P.3d 545, 547 (2014) (quoting *City of Phoenix v. Butler*, 110 Ariz. 160, 162, 515 P.2d 1180, 1182 (1973)), and we decline to do so here.

¶12        The Debords argue that requiring compliance with § 33-967

---

[3]        Federal judgments from district courts outside this state are treated in the same manner as superior court judgments under the Uniform Enforcement of Foreign Judgments Act, A.R.S. §§ 12-1702–1708.

for federal judgment liens but not for state judgment liens creates an absurd result. We disagree. *See State v. Estrada*, 201 Ariz. 247, 251 ¶ 17, 34 P.3d 356, 360 (2001) (noting that we seek to avoid absurd results and that a result is absurd only if "so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons with ordinary intelligence and discretion" (quoting *Perini Land Dev. Co. v. Pima County*, 170 Ariz. 380, 383, 825 P.2d 1, 4 (1992))). Federal abstracts of judgment may lack some of the identifying information necessary to create a lien under state law. *See Davis v. State Nat'l Bank* (*In re Davis*), 174 B.R. 223, 227–28 (Bankr. N.D. Tex. 1994) (holding no lien attached where federal abstract of judgment lacked information required to create a valid judgment lien under Texas law). The legislature could have determined that compliance with both § 33-961 *and* § 33-967 was necessary to fill in the gaps and create a valid lien based on federal court judgments.

¶**13**		There are several other examples in Title 33 where the legislature has conditioned instrument validity on compliance with a statutory mandate. *See, e.g.*, A.R.S. § 33-405(E) ("A beneficiary deed is *valid* only if the deed is executed and recorded as provided by law in the office of the county recorder of the county in which the property is located before the death of the owner or the last surviving owner." (emphasis added)); A.R.S. § 33-452 ("A conveyance or incumbrance of community property is *not valid* unless executed and acknowledged by both husband and wife . . . ." (emphasis added)); A.R.S. § 33-1501(A)(3)(f) ("A memorandum of lease is *not valid* unless the signatures of both the landlord and the tenant are included on the memorandum and are acknowledged." (emphasis added)). Because no similar language appears in the statutes at issue here, we decline to impose this requirement when the legislature did not see fit to do so.

¶**14**		That is not to say, however, that there are no negative consequences to a judgment creditor who fails to file an information statement. Section 33-967(D) makes it clear that a lien's priority is determined upon a judgment creditor's compliance with § 33-967(A). A.R.S. § 33-967(D). Put differently, filing the certified judgment creates a valid lien as against the judgment debtor, but it remains unperfected and does not have priority against other competing interests until a judgment creditor complies with § 33-967. *See* § 33-967(D); Black's Law Dictionary 152 (10th ed. 2014) (defining "attachment" as the creation of a security

interest); Black's Law Dictionary 1318 (10th ed. 2014) (defining "perfection" as a "[v]alidation of a security interest as against other creditors.").

**¶15**        This interpretation furthers the purpose of the applicable statutes, as amended in 1996. The legislature enacted the information sheet requirement to prevent erroneous identifications of judgment debtors and speed up real estate closings. *See* Senate Fact Sheet, S.B. 1300 at 1, 42d Leg., 2d Reg. Sess. (1996). Because losing priority may eliminate any economic benefit from filing a lien, the threat of losing priority provides a strong incentive for judgment creditors to file the information statement. Having determined that the Lewises have a valid lien, we now turn to whether "priority" as used in § 33-967(D) includes fee interests or only competing liens.

### B. "Priority" as used in § 33-967(D) affects the rights between competing creditors, not subsequent purchasers.

**¶16**        We do not analyze statutory language in a vacuum, but consider the context in which the legislature used it. *Adams v. Comm'n on Appellate Court Appointments*, 227 Ariz. 128, 135 ¶ 34, 254 P.3d 367, 374 (2011) ("[I]t is a 'fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used.'" (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993))).

**¶17**        The court of appeals broadly defined "priority" in § 33-967(D) as "[t]he status of being earlier in time or higher in degree or rank; precedence." *Lewis*, 236 Ariz. at 62 ¶ 15, 335 P.3d at 1141 (quoting Black's Law Dictionary 1386 (10th ed. 2014)). It then extrapolated that "where a subsequent purchaser acquires an interest in a judgment debtor's real property after a judgment creditor records a judgment but before attaching an information statement, the resulting judgment lien loses its priority and the judgment creditor cannot satisfy his or her judgment by executing on that property." *Id.* at 63 ¶ 18, 335 P.3d at 1142.

**¶18**        The court of appeals erred when it defined "priority," and thus concluded that the Lewises' lien lost priority against the Debords' fee interest. Although the court used an accepted definition of "priority," in

the context of liens, commercial law, and Title 33, a more appropriate definition here is "a creditor's right to have a claim paid before other creditors of the same debtor receive payment." Black's Law Dictionary 1386 (10th ed. 2014); *see also* Black's Law Dictionary 1387 (10th ed. 2014) (defining "priority of liens" as "[t]he ranking of liens in the order in which they are perfected").

**¶19**     Under Arizona law, the well-settled default rule is that a subsequent purchaser with notice takes subject to an existing judgment lien. *See Sysco Ariz.*, 235 Ariz. at 165 ¶ 6, 330 P.3d at 355. Absent any clear statement in the statute, we decline to infer that the legislature intended to upset this rule.

**¶20**     The record is unclear whether the Debords had actual notice of the Lewises' judgment lien. But it is undisputed that the Debords had constructive notice of the certified judgment the Lewises recorded in compliance with § 33-961(A). *See Collins v. Stockwell*, 137 Ariz. 416, 420, 671 P.2d 394, 398 (1983) (noting that a recorded lien should alert those "searching the record to the fact that a lien has been filed on the subject property and that further inquiry should be made"). Consequently, the Debords took the property subject to the lien, and the Lewises' failure to file an information statement does not preclude them from executing against the property. *See Sysco Ariz.*, 235 Ariz. at 165 ¶ 6, 330 P.3d at 355 ("[A]ny subsequent purchaser with actual or constructive notice takes the property subject to the lien.").

### III.   CONCLUSION

**¶21**     We vacate the court of appeals' opinion, reverse the superior court's entry of summary judgment in favor of the Debords, and remand the case to that court for further proceedings consistent with this opinion.